Matthias, J.
The sole question presented is whether the Common Pleas Court has authority to extinguish a preferential lien which was obtained by a general unsecured creditor of an insolvent corporation while the corporation was in voluntary dissolution, had filed its certificate of dissolution with the Secretary of State and was engaged in winding up its affairs.
The Common Pleas Court has jurisdiction over a corporation which has been dissolved voluntarily and is in the process of winding up its affairs. Such jurisdiction is granted by Section 1701.89(A), Revised Code, which, in part, provides:
“Without limiting the generality of its authority, the Court *297 of Common Pleas of the county in this state in which is located the principal office of a voluntarily dissolved corporation * * * upon the petition of the corporation, or of a majority of the directors, * * # may at any time order and adjudge in respect of the following matters:
6 i * # #
“ (2) The stay of the prosecution of any proceeding against the corporation or involving any of its property * * *.
“ (3) The settlement or determination of all claims of every nature against the corporation or any of its property * * *.
it##*
“ (9) The issuance or entry of any injunction or any other order which the court deems proper in the administration of the trust involved in the winding up of the affairs of the corporation * *
The phrase, “any other order which the court deems proper,” clearly gives the court the authority to issue an order dissolving a judgment lien. Where the language is clear and unambiguous, as it is in this section, there is no need to resort to rules of statutory construction. In this situation, however, resorting to such rules of construction merely affirms the plain meaning conveyed by the language of the statute.
In 1927, the General Assembly enacted a new corporation act. The section relating to the jurisdiction of the Common Pleas Court in voluntary dissolutions was Section 8623-85, General Code. This section is virtually the same as present Section 1701.89, Revised Code. One of the evils which the Legislature intended to correct by such section was the race to the courthouse by unsecured creditors in an attempt to obtain priority for their claims. Davies, the secretary of the Ohio State Bar Association committee which drafted and sponsored the corporation act, comments on this in 1 Davies, Ohio Corporation Law, 1048, as follows:
“The purpose of subdivision two is to enable the court to end ‘the race of diligence’ and to preserve the assets for the benefit of all creditors ratably rather than to permit one creditor to secure a preference by obtaining a judgment and issuing execution.”
If we were to hold that the Court of Common Pleas has no *298 power to extinguish a judgment lien obtained against a dissolved insolvent corporation, the legislative intention would be thwarted. In the ordinary situation, the debtor is sufficiently protected. The corporation would be served with a summons in an action by a creditor, and it could then explain to the court that it was insolvent and winding up its affairs and pray that the court stay the action, under Section 1701.89 (A) (2), Revised Code. However, where the claim is secured by a cognovit note, a creditor can obtain his judgment and lien without giving notice to either the debtor or to the other creditors. If such a lien were entitled to preference, creditors with cognovit notes would wish to obtain judgments and executions as soon as possible rather than wait for the debtor corporation to complete its pro rata distribution. If such a creditor filed his certificate of judgment first, he might be paid in full. If he waited and another creditor obtained a cognovit judgment and filed his certificate, the former might receive nothing. The obvious result would be a race to the courthouse by all creditors with cognovit notes.
This does not mean that a creditor can never obtain a judgment against a dissolved insolvent corporation. Section 1701.88(B), Revised Code, provides that claims existing against the corporation may be prosecuted to judgment. Such a rule is desirable. It enables a creditor whose claim has been refused by the corporation to obtain a judicial determination of its validity. In some cases, however, the only result of allowing a creditor to proceed to judgment would be to put him in a position to obtain an inequitable preference. Thus the right given to creditors by the first part of Section 1701.88(B) is expressly made subject, under additional provisions therein, to the power of the court to stay “any proceeding, execution or process, or the satisfaction or performance of any order, judgment, or decree.” The creditor may institute suit, but the court, in its discretion, may stay its prosecution or allow judgment but stay execution according to the equities of the situation.
The Court of Appeals in reaching its decision considered the fact that no stay order had been obtained prior to the time *299 the lien attached. It held in effect that the Common Pleas Court lost its jurisdiction as to that particular claim when the lien was perfected previous to the institution of the court action.
Reading such a limitation into the authority granted to the court by Section 1701.89 is unwarranted. There is nothing in this section which suggests that the court is to lose its jurisdiction over a claim against the corporation merely because a judgment and lien have been obtained on the claim. The language of the statute is sweeping. The court “may at any time” issue any “order which the court deems proper in the administration of the trust involved in the winding up of the affairs of the corporation.” The statute does not say that no order may be granted after a judgment lien has been obtained. On the contrary it says that the order may be issued at any time.
The use of the phrase, “administration of the trust,” is significant. It shows that the General Assembly intended to codify the “trust-fund” doctrine expressed by this court in Rouse, Trustee, v. Merchants’ National Bank (1889), 46 Ohio St., 493. Judge Williams, speaking for a unanimous court, after stating that when a corporation becomes insolvent the corporate property becomes a trust fund for the benefit of creditors, stated further:
“In equity the corporate property becomes the property of the creditors, and their equities are equal. Every creditor, who became such by parting with his money, property or other thing of value to the corporation, contributed to the accomplishment of its purposes, and augmented its corporate fund; and where the fund is no longer demanded for the purposes of the corporation, the rights of the creditors become fixed instantly and equally; for each, having contributed to the common fund, has an interest in it, in proportion to his claim, equally with every other creditor.”
The trust comes into being when the certificate of dissolution is filed. Thereafter the assets are no longer needed to carry out the purposes for which the corporation was formed. This property is held by those in charge of winding up the affairs of the corporation to satisfy claims against the corporation and to distribute what remains to the shareholders. The creditors of a dissolved insolvent corporation are the bene *300 fieial owners of its assets. This is the theory behind the statutory grant of power to the Common Pleas Court to issue injunctions, stay proceedings, determine claims and issue other orders. The court is to ensure that each beneficial owner receives his due according to the equities of the situation.
We, therefore, hold that the Common Pleas Court has the power to extinguish a lien which it finds gives one of the creditors an unfair preference over the others.

Judgment reversed.

Taft, C. J., Zimmerman, Herbert and Gibson, JJ., concur.
O’Neill and Griffith, JJ., dissent.